IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL TILLI, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 13-4435 |
| WILLIAM FORD, et al., | : | |
| Defendants. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                       **OCTOBER 9, 2013**

Presently before this Court are separate Motions to Dismiss filed by Defendant, William Ford, and Defendants, Andrea Naugle and the County of Lehigh, and Plaintiff's Responses thereto. For the reasons set forth below, Defendants' Motions to Dismiss are granted.

**I. BACKGROUND**

On July 30, 2013, Plaintiff, Daniel Tilli ("Plaintiff"), filed a pro se Complaint against Defendants, William Ford (Defendant Ford), Andrea Naugle (Defendant Naugle) and the County of Lehigh (Defendant Lehigh County) (collectively "Defendants") in federal court alleging violations of his civil rights.[1] See Compl. at 1. The following facts are derived from Plaintiff's often rambling and incomprehensible Complaint and supplemented where needed with facts set forth in Defendants' Motions to Dismiss.

On July 27, 2011, Plaintiff filed a civil action in the Common Pleas Court of Lehigh

---

[1] In consideration of Plaintiff's pro se status, we liberally construe the factual allegations set forth in the Complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (stating that pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

County against a nursing home, known as Manor Care, and several individuals associated with the operations of Manor Care.² Compl. at 1; Def. Ford's Mot. to Dismiss at 1. Defendant Ford, a Judge in the Court of Common Pleas of Lehigh County, presided over Plaintiff's action. Def. Ford's Mot. to Dismiss at 1. On September 15, 2011, Plaintiff filed a motion seeking the recusal of Defendant Ford in the Manor Care litigation. Compl. at 2. Plaintiff's motion was denied by Defendant Ford on October 31, 2011. Id.

After alleging that defendants failed to answer his Complaint, Plaintiff moved for default judgment on September 28, 2011. Compl. at 1; Def. Ford's Mot. to Dismiss at 2. After finding default judgment improper because the defendants in the Manor Care litigation filed preliminary objections, Defendant Ford dismissed Plaintiff's claims on December 1, 2011. Def. Ford's Mot. to Dismiss at 2. Subsequent to dismissal, Plaintiff filed appeals with the Superior Court of Pennsylvania and the Supreme Court of Pennsylvania, which were denied.³ Id.

In the matter before this Court, Plaintiff alleges that Defendants violated his civil rights. Compl. 2. However, Plaintiff's pro se Complaint is rife with conclusory allegations and short on facts. Nonetheless, we interpret Plaintiff's disorganized and sometimes incomprehensible Complaint to assert the following claims.⁴ Plaintiff contends that Defendant Ford retaliated

---

²See Tilli v. Manorcare HS, et al., Civil Division, No. 2011-2704 (hereinafter, "Manor Care litigation").

³In fact, the Superior Court of Pennsylvania dismissed Plaintiff's initial appeal on January 2, 2013, and Plaintiff's petition to reinstate his appeal on April 26, 2013. See Def. Ford's Mot. to Dismiss at 2.

⁴We note that Plaintiff's Complaint is representative of all of his later filings in that they are a hodgepodge of typed and barely legible scrawl with meandering, disorganized and poorly written assertions punctuated by improper case citations that make reading and comprehending the Plaintiff's factual background and legal arguments an arduous task. This Memorandum of Law is our best effort at discerning Plaintiff's claims.

against him for filing "a complaint" against Defendant Ford. Id. We believe that Plaintiff is referring to his denied motion for the recusal of Defendant Ford as Judge in the Manor Care litigation. In addition, Plaintiff alleges that Defendant Ford and Defendant Naugle, in her capacity as the elected Clerk of Judicial Records for Lehigh County, engaged in a conspiracy to deprive Plaintiff of a default judgment against the defendants in the Manor Care litigation. Compl. at 1.

In remuneration for Defendants' alleged violations, Plaintiff seeks relief in the sum of $850,000 in actual damages, $975,000 in punitive damages or, in the alternative, to grant default judgment in the state court action.

## II. PROCEDURAL HISTORY

Plaintiff filed a civil Complaint in the United States District Court for the Eastern District of Pennsylvania on July 30, 2013, against Defendants alleging violations of his civil rights pursuant to 42 U.S.C. §§ 1983 & 1985. See Compl. at 1. This case was subsequently assigned to the undersigned. Id. On August 6, 2013, Plaintiff filed a Motion to Recuse Judges Robert Kelly and Legrome Davis from hearing this action. See Pl.'s Mot. to Recuse. On August 22, 2013, Defendant Ford filed a Motion to Dismiss Plaintiff's Complaint. See Def. Ford's Mot. to Dismiss. Four days later, the remaining Defendants, Andrea Naugle and the County of Lehigh, filed a separate Motion to Dismiss. See Def. Naugle and Lehigh County's Mot. to Dismiss. In response, Plaintiff filed two Motions: a "Request and Demand for Default Judgment from Defendants" on August 28, 2013; and a singular Response to Defendants' separate Motions to Dismiss. See Doc. 8-10.

We denied Plaintiff's Motion for Default Judgment on September 20, 2013, because

3

Defendants had filed timely motions to dismiss.[5]  See Doc. 12.  Further, we denied Plaintiff's Motion for Recusal on September 24, 2013, on the grounds that Plaintiff neglected to provide any supporting evidence that would permit a reasonable person to harbor doubts concerning my partiality.  See Doc. 14.

### III. DISCUSSION

The sole remaining Motions before this Court are the separate Motions to Dismiss filed by Defendant William Ford and Defendants Lehigh County and Andrea Naugle.  In light of the fact that Defendants premised their Motions on the same grounds and with an eye toward clarity and efficiency, we analyze both Motions contemporaneously in this Memorandum Opinion.

Defendants' Motions to Dismiss are premised on the following two grounds: (1) this Court lacks subject matter jurisdiction thereby mandating dismissal under Rule 12(b)(1); and (2) Plaintiff's failure to set forth any adequate claims from which relief may be granted requires dismissal pursuant to Rule 12(b)(6).  See Def. Ford's Mot. to Dismiss; Def. Naugle and Lehigh County's Mot. to Dismiss; see also Fed. R. Civ. P. 12(b)(1),(6).  We proceed to analyze Defendants' arguments.

**A.  Defendants' Motions to Dismiss Pursuant to Rule 12(b)(1)**

In separately filed Motions to Dismiss under Rule 12(b)(1), Defendant Ford and Defendants Naugle and Lehigh County, argue that this Court lacks subject matter jurisdiction over Plaintiff's claims.  See Def. Ford's Mot. to Dismiss; Def. Naugle and Lehigh County's Mot. to Dismiss; see also Fed. R. Civ. P. 12(b)(1).  Before further proceeding, we note that

---

[5]See Francis v. Joint Force Headquarters Nat'l Guard, 2006 WL 2711459 (D.N.J. Sept. 19, 2006) *aff'd in part*, 247 F. App'x 387 (3d Cir. 2007)(finding that the filing of timely motions to dismiss precludes default judgment).

4

Defendants' Motions are facial challenges to this Court's subject matter jurisdiction, and as such, we must consider the allegations of the Complaint as true, and in the light most favorable to the Plaintiff. See Goodson v. Maggi, 797 F. Supp. 2d 624, 630 (W.D. Pa. 2011) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). When "considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." Fed. Realty Inv. Tr. v. Juniper Props. Group, No. 99-3389, 2000 WL 45996, at *3 (E.D. Pa. Jan. 21, 2000) (citing Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993)).

Defendants argument for dismissal relies on two decisions of the Supreme Court of the United States, Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). These decisions have coalesced into what is commonly known as the Rooker-Feldman doctrine. Rooker-Feldman holds that a United States District Court has "'no authority to review final judgments of a state court in judicial proceedings' and . . . lacks subject matter jurisdiction insofar as a plaintiff seeks review of a state court's judgment." Santos v. Secretary of D.H.S., No. 10-7266, 2012 WL 2997036, at *6 (E.D. Pa. July 23, 2012) (quoting Great Western Mining & Mineral Co. v. Fox Rothschild, LLP, 615 F.3d 159, 166 (3d Cir. 2010)). "The doctrine is implicated when, in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual." In re Madera, 586 F.3d 228, 232 (3d Cir. 2009). This includes claims alleging the unconstitutionality of state court actions. See Goodson, 797 F. Supp. 2d at 632. However, "the court is not precluded from exercising subject matter jurisdiction 'simply because a party attempts to litigate

in federal court a matter previously litigated in state court.'" Gage v. Warren Twp. Comm. & Planning Bd. Members, 463 F. App'x 68, 71 (3d Cir. 2012) (quoting Exxon Mobil Corp. v. Saudi Basic Industr. Corp., 544 U.S. 280, 284 (2005)). "'If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he is a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" Id. (quoting 544 U.S. at 284).

The United States Court of Appeals for the Third Circuit ("Third Circuit") has set forth a four-part test to determine whether an action lies within the exclusionary ambit of the Rooker-Feldman doctrine. See Great Western, 615 F.3d at 166. Under this test, a federal district court lacks subject matter jurisdiction to hear a plaintiff's claims if: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state court judgments. Id. Due to the obvious nature of the first and third prongs, the second and fourth prongs are "the key to determining" whether Plaintiff "presents an independent, non-barred claim."[6] Id.

The second prong, whether the plaintiff complains of injuries caused by state court judgments, inquires into the source of plaintiff's injury. See Goodson, 797 F. Supp. 2d at 632. The Third Circuit provided the following examples in Great Western to aid in making this determination:

> Suppose a state court, based purely on state law, terminates a
> father's parental rights and orders the state to take custody of his

---

[6]We note that the first and third prongs are satisfied in this case as Plaintiff lost in state court and filed this federal action after the state court's judgment was entered.

> son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

Great Western, 615 F.3d at 166-67. On the other hand, the source of the injury was the defendant's actions and not the state court judgment in this scenario:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state court judgment.

Id.

In addition, the Third Circuit has counseled that timing is a helpful guidepost in determining the source of the injury, "that is, whether the injury complained of in federal court existed prior to the state court proceedings and thus could not have been caused by those proceedings." Goodson, 797 F. Supp. 2d at 634 (quoting 615 F.3d at 166-67).

The fourth prong, whether the plaintiff is inviting the district court to review and reject the state court judgments, is meant to insure that a district court does not overstep its boundaries by reviewing the decision of a state court. Great Western, 615 F.3d at 169. However, the fourth prong is not automatically satisfied when a plaintiff raises a claim for damages that "may require review of state court judgments, and even a conclusion that they were erroneous." Id. at 173. Rather, Rooker-Feldman is invoked to bar a claim where its adjudication would mean that: "(1) the federal court must determine that the state court judgment was erroneously entered in order to

grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." Santos, 2012 WL 2997036, at *7 (quoting In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005)).

In this case, Plaintiff's claim for default judgment is precluded by Rooker-Feldman. Here, the source of Plaintiff's injury is the decision of the Court of Common Pleas of Lehigh County denying default judgment and dismissing Plaintiff's suit. Granting the default judgment that Plaintiff seeks would require this Court to determine that the decision of the Court of Common Pleas was incorrect, which would effectively negate the state court's judgment. See Santos, 2012 WL 2997036, at *7 (quoting 407 F.3d at 580). This impermissible review is precisely the type of judicial action forbidden by Rooker-Feldman. See In re Madera, 586 F.3d at 232. Moreover, Plaintiff bears the burden of showing that jurisdiction is proper in this case, and he has failed to do so. Fed. Realty Inv. Trust, 2000 WL 45996, at *3 (citing Packard, 994 F.2d at 1045). Consequently, Defendants' Motions to Dismiss Plaintiff's claims for default judgment are granted as this Court lacks subject matter jurisdiction under Rooker-Feldman.

However, Plaintiff's conspiracy and retaliation claims are not barred by Rooker-Feldman as these are independent claims that would not require the review and rejection of the state court's judgment. See Gage, 463 F. App'x at 71 (citing Exxon Mobil Corp., 544 U.S. at 284) (holding subject matter jurisdiction exists where federal plaintiff brings independent claim, even if it denies a legal conclusion reached in state court). Therefore, this Court possesses subject matter jurisdiction to hear Plaintiff's conspiracy and retaliation claims.

B.   **Defendants' Motions to Dismiss pursuant to Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

8

of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Pursuant to Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has failed to set forth a claim from which relief may be granted. Fed. R. Civ. P. 12(b)(6); see also Lucas v. City of Phila., No. 11-4376, 2012 WL 1555430, at *2 (E.D. Pa. May 2, 2012) (citing Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005)). In evaluating a motion to dismiss, the court must view any reasonable inferences from the factual allegations in a light most favorable to the plaintiff. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The Supreme Court set forth in Twombly, and further defined in Iqbal, a two-part test to determine whether to grant or deny a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Third Circuit has noted that these cases signify the progression from liberal pleading requirements to a more "exacting scrutiny" of the complaint. Wilson v. City of Phila., 415 Fed. App'x 434, 436 (3d Cir. 2011).

Initially, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555. Conclusions of law can serve as the foundation of a complaint, but to survive dismissal they must be supported by factual allegations. Iqbal, 556 U.S. at 679. These factual allegations must be explicated sufficiently to provide a defendant the type of notice that is contemplated by Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing that the pleader is entitled to relief); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Where there are well-pleaded facts, courts must assume their truthfulness. Iqbal, 556

9

U.S. at 679.

Upon a finding of a well-pleaded complaint, the court must then determine whether these allegations "plausibly" give rise to an entitlement to relief. Id. at 679. This is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Plausibility compels the pleadings to contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. 544 at 570). This is not a probability requirement; rather plausibility necessitates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" Id. (quoting Twombly, 550 U.S. at 557). In other words, a complaint must not only allege entitlement to relief, but must demonstrate such entitlement with sufficient facts to nudge the claim "across the line from conceivable to plausible." Id. at 683; see also Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

**(a)** **Civil Rights Statutes**

**(1)** *42 U.S.C. § 1983*

Congress enacted 42 U.S.C. § 1983 to provide a neutral federal forum where civil grievances could be filed against state officials. See H.R. 96-548, at 1 (1979), *reprinted in* 1979 U.S.C.C.A.N. 2609; see also 42 U.S.C. § 1983. For a plaintiff to gain relief under § 1983, he or she must establish: (1) that the defendant acted under the color of state law, and, (2) that the defendant's action deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; see also Groman v. Twp. of

Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 does not create any substantive rights; rather, it provides a remedy for the violation of rights created by other federal laws. Groman, 47 F.3d at 633; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

Whether the defendants acted under the color of state law is a threshold issue to be decided before proceeding under § 1983. Groman, 47 F.3d at 638. Furthermore, it is Plaintiff's burden to demonstrate that each individual Defendant committed the alleged wrong-doing. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Liability under § 1983 requires a showing of personal involvement, and cannot be predicated solely on the doctrine of *respondeat superior*. Id. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence which must be made with appropriate particularity." Albrecht v. Correctional Med. Serv., No. 06-2772, 2009 WL 1834320, at *3 (D.N.J. June 25, 2009) (quoting Rode, 845 F.2d at 1207).

**(2)** *42 U.S.C. § 1985*

There are three statutorily created categories under 42 U.S.C. § 1985 from which a claim for conspiracy to interfere with a plaintiff's civil rights can emanate: (1) preventing an officer from performing duties; (2) obstructing justice or intimidating a party, witness or juror; and (3) depriving a plaintiff of rights or privileges. See 42 U.S.C. § 1985. Essential to any § 1985 claim is the existence of a conspiracy. See Id. This requires Plaintiff to set forth "specific factual allegations that demonstrate collusion or concerted action among the alleged conspirators." Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).

**(b)     Defendants' Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)**

**(1)     *Defendant Ford*[7]**

Plaintiff contends that: (1) Defendant Ford engaged in a conspiracy with Defendant Naugle to deprive Plaintiff of default judgment in the Manor Care litigation; and (2) Defendant Ford retaliated against Plaintiff for filing of a Complaint against Ford by denying Plaintiff's recusal request, preventing Defendant Naugle from entering default judgment and dismissing the case. See Compl. at 1-2.  However, "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (citing Mireles v. Waco, 502 U.S. 9, 12 (1991)).  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978).  Furthermore, an allegation that a judge acted in a conspiracy bears no effect on the immunity determination. See Malcomb v. Dietz, 487 F. App'x 683, 685 (3d Cir. 2012); see also Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987) (holding that "since absolute immunity spares the official any scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity").  Judicial immunity is "essential to protect the integrity of the judicial process" as it enables judges to "exercise discretion vigorously and effectively, without fear that

---

[7]We find it troubling that Plaintiff has filed a number of civil rights suits against sitting judges for actions taken in exercise of their judicial authority, which were all dismissed due to judicial immunity.  See Tilli v. Rehnquist, 60 F. App'x 828 (D.C. Cir. 2003); Tilli v. Irenas, No. 00-4717, 2000 WL 1428680, at *1 (E.D. Pa. Sept. 27, 2000); Tilli v. Capobianco, 502 Pa. 447, 449 (Pa. 1983); Tilli v. Co. of Northampton, 370 F. Supp. 459, 460 (E.D. Pa. 1974).

they will be subjected to vexatious or frivolous litigation." Egnotovich v. Greenfield Twp. Sewer Auth., No. 05-1818, 2006 WL 860681, at *2 (M.D. Pa. Apr. 3, 2006) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200 (1985)).

There are two requirements that must be met for a judge to be shielded by judicial immunity. Gallas v. Supreme Court of Penn., 211 F.3d 760, 768-69 (3d Cir. 2000). First, the actions must be taken in the judge's official capacity. Id. In considering this factor, we must "assess the nature of the act and determine whether it is a function typically performed by a judge and whether the parties dealt with the judge in his official capacity." Egnotovich, 2006 WL 860681, at *2 (citing Gallas, 211 F.3d at 768-69). Second, "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id.; see also Malcomb v. Dietz, 487 F. App'x 683, 685 (3d Cir. 2012). Thus, "a judge will only be deprived of immunity when he acts in the 'clear absence of all jurisdiction.'" Id.

Judicial immunity is a well-established doctrine that has been applied for well over a century. See Bradley v. Fisher, 80 U.S. 335 (1871). In fact, Plaintiff should be well versed in this doctrine. During the past almost forty years, Plaintiff has initiated numerous lawsuits that were dismissed due to judicial immunity. See Tilli v. Rehnquist, 60 F. App'x at 828; Tilli v. Irenas, 2000 WL 1428680, at *1; Tilli v. Capobianco, 502 Pa. 447 at 449; Tilli v. Co. of Northampton, 370 F. Supp. 459 at 460. However, Plaintiff remains undeterred, and yet again runs head first into the bulwark protecting judges in the performance of their judicial duties.

All of the allegations set forth by Plaintiff in the Complaint relate to actions taken by Judge Ford in his capacity as a judge and acting within his jurisdiction. Specifically, Defendant Ford's denial of both Plaintiff's recusal request and request for default judgment, and his order

13

dismissing the case, constitute actions typically performed by a judge in his official capacity and squarely within his jurisdiction. See Egnotovich, 2006 WL 860681, at *2 (citing Gallas, 211 F.3d at 768-69). Accordingly, Judge Ford is protected by absolute immunity, and Plaintiff's frivolous claims against him are dismissed. See Johnson v. N.J.D.M.V., 134 F. App'x 507, 509 (3d Cir. 2005); Lanier v. Weber, No. 91-7265, 1991 WL 280245, at *2 (E.D. Pa. Dec. 26, 1991) (dismissing plaintiff's claims as frivolous on grounds of absolute judicial immunity).

### (2)     Defendants County of Lehigh and Andrea Naugle

Noticeably absent from the Complaint is any assertion by Plaintiff of any action taken by the County of Lehigh in violation of Plaintiff's civil rights. See Rode, 845 F.2d at 1207 (finding liability under civil rights statutes requires plaintiff show personal involvement). In fact, the only mention of the County pertains to Plaintiff's erroneous conclusion that the County of Lehigh is the employer of both Defendant Ford and Defendant Naugle.[8] See Compl. at 1. As liability under 42 U.S.C. §§ 1983 & 1985 cannot be predicated on *respondeat superior* (even assuming *arguendo* that Defendant Lehigh County was the employer of Defendants Ford and Naugle), Defendant Lehigh County cannot be liable for the alleged actions of Defendants Ford and Naugle. See Suber v. Guinta, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012). Thus, Plaintiff has failed to state any cognizable claims against Defendant Lehigh County.

In Plaintiff's threadbare Complaint, he makes only two assertions relating to Defendant Naugle's alleged violation of his civil rights. First, Plaintiff states that "Clerk Naugle should

---

[8]Defendant Ford, as a sitting Judge on the Court of Common Pleas of Lehigh County, is a member of the Pennsylvania judiciary, and not an employee of Lehigh County. See 42 Pa. C.S. § 301(4); Cranston v. Zepp, 18 Pa. D&C 384, 386 (Pa. Comm. Pl. 1993) (stating that common pleas judges are absolutely independent of the county). Defendant Naugle is an elected official over which Lehigh County has no ability to hire, fire or supervise. See Defs.' Mot. to Dismiss at 9.

have known better not to violate her official duty under oath then to conspire with Ford to deny Tilli a 1.9 million dollar default due Tilli." Compl. at 1. Second, Plaintiff declares "Ford prevented Naugle not to grant Tilli a default judgment." Compl. at 2. These allegations fail to set forth any actions personally taken by Defendant Naugle. See Rode, 845 F.2d at 1207. Rather, they are merely conclusions of law, which are devoid of any factual support. As such, we cannot make "a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 679.

Furthermore, an allegation of a conspiracy requires a heightened specificity in the pleadings, even in civil rights actions. See Santos, 2012 WL 2997036, at *13 (citing Bieros v. Nicola, 860 F. Supp. 223, 225 (E.D. Pa. 1994)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Goodson, 797 F.Supp.2d at 638. Here, Plaintiff has neglected to allege any facts that indicate that the Defendants entered into an agreement or planned to deprive Plaintiff of his constitutional rights, nor any details evidencing that Defendants engaged in any act in furtherance of the agreement. See Id. Rather, Plaintiff relies solely upon bald allegations of a conspiracy, which are insufficient to support his claims. See Mincy v. Klem, No. 08-0066, 2009 WL 331432, at *5 (M.D. Pa. Feb. 9, 2009) (finding plaintiff cannot rely on "subjective suspicions and unsupported speculation" in alleging conspiracy).

Finally, disregarding the fatal inadequacy of the Complaint, Plaintiff's claims against Defendant Naugle, acting in a judicial or quasi-judicial capacity as Clerk of Judicial Records for Lehigh County, are barred by the doctrine of judicial immunity. See Mercedes v. Barrett, 453

F.2d 391, 392 (3d Cir. 1971). Absolute immunity does not apply to every action against court personnel. Kwasnik v. LeBlon, 228 F. App'x 238, 243 (3d Cir. 2007). Rather, "it is the nature of the function performed, not the identity of the actor who performed it, that informs the immunity analysis." Forrester v. White, 484 U.S. 219, 229 (1988). "When judicial immunity is extended to officials, other than judges, it is because their judgments are functionally comparable to those of judges." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993).

Here, Plaintiff's claims arise from the alleged unlawful failure of Defendant Naugle to enter default judgment in favor of Plaintiff in the Manor Care litigation. "The decision to enter a default judgment or not is the most judicial of actions the clerk could make." Jenkins v. Clerk of Court, 150 F. App'x 988, 990 (11th Cir. 2005) (quoting Roland v. Phillips, 19 F.3d 552, 555 11th Cir. 1994)); see also Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002). The decision whether to enter or not enter a default judgment is essentially the same action performed by a judge in such situation. Therefore, Defendant Naugle is immune from liability in making this determination. Furthermore, quasi-judicial immunity applies to court personnel acting in their official capacity. Davis v. Phila. County, 195 F. Supp.2d 686, 688 (E.D. Pa. 2002) (citing Mercedes, 453 F.2d at 392). This is due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters and other judicial adjuncts." Holland v. Pocono Reg. Police, No. 13-1406, 2013 WL 3973080, at *9 (M.D. Pa. July 31, 2013) (quoting Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1994)).

**(c)** **Amendment of the Complaint**

Decades of clear judicial precedent mandate that "in civil rights cases district courts must

16

offer amendment – irrespective of whether it is requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Darr v. Wolfe, 767 F.2d 79, 80-81 (3d Cir. 1985); Kauffman v. Moss, 420 F.2d 1270, 1276 (3d Cir. 1970); I-Keim Smith v. Lt. J. Price, No. 11-1581, 2012 WL 1068159, at *5 (M.D. Pa. Mar. 5, 2012). While we are cognizant of these holdings, we find that allowing Plaintiff an opportunity to amend the Complaint would be futile. First, the doctrine of judicial immunity shields Defendants Ford and Naugle from any liability in this case. Second, Defendant Lehigh County cannot be liable for the actions of Defendants Ford and Naugle.[9] See Suber, 902 F. Supp.2d at 608 (holding that an action filed pursuant to 42 U.S.C. §§ 1983 & 1985 cannot be predicated on *respondeat superior).* Finally, even granting Plaintiff the liberalities that accompany his pro se status, we find that the Complaint is devoid of any grounds to bring suit against any of the Defendants. Accordingly, all of Plaintiff's claims against Defendants Ford, Naugle and Lehigh County are dismissed with prejudice.

## IV. CONCLUSION

In light of Plaintiff's proclivity for filing repetitious lawsuits, we find it necessary to address some issues prior to disposing of this case. Plaintiff labels himself as a "pro se filer of his own cases for over 30 years." See Compl. at 1. While this is correct, a review of the previous lawsuits filed by Plaintiff evidences a litany of dismissals. From these dispositions, it is apparent that Plaintiff consistently files lawsuits that are dismissed because, at best, they do not

---

[9]We once again note that Defendant Lehigh County claims they are not the employer of Defendants Ford or Naugle.

raise cognizable legal issues and, at worst, they are deemed frivolous. Most troubling is the fact that Plaintiff continually exhibits the same behavior; his *modus operandi* appears to be that subsequent to filing trivial lawsuits resulting in dismissal, Plaintiff immediately brings suit against the Judge who ruled against him.[10] This ensuing frivolous lawsuit requires the utilization of finite judicial resources, whose deleterious effect is further exacerbated by Plaintiff's inability to write clearly or conceive logical legal arguments. While we acknowledge the special position occupied by the pro se litigant in our judicial system, we are left to wonder what a court is left to do when confronted with a litigant who consistently files frivolous actions against judicial officers. With due regard for the costs borne in money and time by the defendants in these actions, we acknowledge that attorney's fees may be necessary not only for remuneration, but also as a deterrent. See Lindquist v. Buckingham Twp., 106 F. App'x 768, 777-78 (3d Cir. 2004) (finding that "a prevailing defendant is entitled to attorney's fees upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation"); see also Barnes Found. v. Twp. of Lower Merion, 242 F.3d 151, 157-58 (3d Cir. 2001). Under 42 U.S.C. § 1988, such fees are statutorily permissible in this case. See 42 U.S.C. § 1988 (stating that in actions under § 1983 and § 1985 reasonable attorney's fees are allowed at the discretion of the Court to the prevailing party).

In conclusion, Plaintiff fails to set forth any meritorious claims against Defendants Ford, Naugle and Lehigh County, and all claims against Defendants are dismissed with prejudice. We note that this was not a close or difficult decision. Plaintiff's Complaint was woefully deficient

---

[10]In making this statement, we specifically refer to these cases found during a cursory review: See Tilli v. Rehnquist, 60 F. App'x at 828; Tilli v. Irenas, 2000 WL 1428680, at *1; Tilli v. Capobianco, 502 Pa. at 449; Tilli v. Co. of Northampton, 370 F. Supp. at 460.

in factual matter, rife with conclusory statements and barred by longstanding legal doctrines.  For the aforementioned reasons, Defendants' Motions to Dismiss are granted, and Plaintiff's claims are dismissed with prejudice.

An appropriate Order follows.